Behrooz Shariati (State Bar No. 174436)
bshariati@jonesday.com
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA  94303
Telephone:      650-739-3939
Facsimile:      650-739-3900

Attorneys for Plaintiff
XILINX, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| XILINX, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>INVENTION INVESTMENT FUND I LP, INVENTION INVESTMENT FUND II LLC, INTELLECTUAL VENTURES LLC, INTELLECTUAL VENTURES MANAGEMENT LLC, INTELLECTUAL VENTURES I LLC, INTELLECTUAL VENTURES II LLC,<br><br>          Defendants. | Case No.  3:11-cv-00671 SI<br><br>**XILINX, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Date:          July 29, 2011<br>Time:          9:00 a.m.<br>Place:         Courtroom 10, 19th Floor<br>Judge:         Honorable Susan Illston<br><br>PUBLIC VERSION |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.     RELEVANT FACTS ....................................................................................... 2

    A.      The Defendants ..................................................................................... 2

    B.      The Defendants' Activities in California ............................................... 4

III.    ARGUMENT .................................................................................................. 6

    A.      Defendants' Motion to Dismiss for Lack of Standing and Failure To Join a Necessary Party Should Be Denied Because Defendants Represented to Xilinx That They Own the Patents-in-Suit and They Offer No Proof to the Contrary ................................................................................................. 6

    B.      Defendants' Motion to Dismiss Under 12(b)(1) and 12(b)(2) Should be Denied Because this Court has Personal Jurisdiction over IV- I and IV-II Arising out of Their Licensing and Enforcement of the Patents-in-Suit and Their Relationship to Intellectual Ventures and Intellectual Ventures Management Which Have Substantial Contacts With the State ........................... 7

        1.      Legal Standard ......................................................................... 7

        2.      IV-I and IV-II Purposefully Directed Their Activities at Xilinx .............. 8

        3.      Xilinx's Claims Arise Out of Defendants' Enforcement and Licensing Activities in California .................................................... 9

        4.      Defendants Have Had Sufficient Contacts With California For This court to Fairly and Reasonably Exercise Jurisdiction Over Them ........... 9

    C.      Xilinx's DJ claims Are Sufficiently Pled to Survive Defendants' Motion to Dismiss ................................................................................................ 10

    D.      Judicial Economy Would Not Be Served By Severing Certain of the Claims and Transferring Them To Delaware ....................................... 14

    E.      In the Alternative, to the Extent the Court Grants Defendants' Motion, Xilinx Requests Leave to Amend the Complaint ................................. 15

IV.     CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

Page

CASES

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*,
  552 F.3d 1324 (Fed. Cir. 2008) ................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 10

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) ................................................................................... 7

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................ 10

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ................................................................................... 9

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F. 2d 834 (9th Cir. 1986) .................................................................................. 14

*Elan Pharma Int'l Ltd. v. Lupin Ltd.*,
  Civil Action No. 09-1008 (JAG), 2010 U.S. Dist. LEXIS 32306,
  (D.N.J. Mar. 31, 2010) ............................................................................................ 12

*Elan Pharma Int'l Ltd. v. Lupin Ltd.*,
  D.N.J. Case No. 09-cv-01008-JAG-MCA, ECF No. 12 ......................................... 12

*Elecs. for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) ................................................................................. 8

*Genentech, Inc. v. GlaxoSmithKline*, LLC,
  Case No. 5:10-cv-04255-JF /PVT, 2010 U.S. Dist. LEXIS 126773
  (N.D. Cal. Nov. 30, 2010) ....................................................................................... 14

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
  328 F.3d 1122 (9th Cir. 2003) ................................................................................. 15

*Intellectual Ventures I LLC v. Check Point Software Techs. Ltd., et al.*,
  N.D. Del. Case No. 1:10-cv-01067-LPS .................................................................. 4

*Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*,
  No. C 09-03449 JSW, 2010 WL 5141839 (N.D. Cal. Dec. 13, 2010) ...................... 9

*Microsoft Corp. v. Phoenix Solutions, Inc.*,
  741 F. Supp. 2d 1156 (C.D. Cal. 2010) ...................................................... 11, 12, 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Microsoft Corp. v. Phoenix Solutions*,
   C.D. Cal. Case No. CV 10-3846 MRP, ECF No. 1 ...................................................... 11, 12

4

5

*Pfizer Inc. v. Apotex Inc.*,
   726 F. Supp. 2d 921 (N.D. Ill. 2010) ................................................................... 12

6

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*,
   148 F.3d 1355 (Fed. Cir. 1998).............................................................................. 7

7

8

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)............................................................................. 8, 9

9

10

*Silent Drive, Inc. v. Strong Indus., Inc.*,
   326 F.3d 1194 (Fed. Cir. 2003)............................................................................ 8

11

*Teirstein v. AGA Med. Corp.*,
   Civil Action No. 6:08cv14, 2009 U.S. Dist. LEXIS 125002
   (E.D. Tex. Feb. 13, 2009) ................................................................................ 12, 13

12

13

*United States v. Cathcart*,
   2010 WL 1048829 (N.D. Cal. Feb. 12, 2010) ........................................................ 10

14

15

*Vistan Corp. v. Fadei USA, Inc.*,
   No. C-10-4862 JCS, 2011 U.S. Dist. LEXIS 47099
   (N.D. Cal. Apr. 25, 2011) ................................................................................ 11, 12

16

17

*Vistan Corp. v. Fadei USA, Inc.*,
   N.D. Cal. Case No. C-10-4862 JCS, ECF No. 11......................................................... 11, 12

18

19

*Wistron Corp. v. Phillip M. Adams & Assocs. LLC*,
   No. C-10-4458 EMC, 2011 U.S. Dist. LEXIS 46079
   (N.D. Cal. Apr. 28, 2011) ................................................................................ 11

20

21

*Wistron Corp. v. Phillip M. Adams & Assocs. LLC*,
   (N.D. Cal. 3:10-cv-04458 EMC, ECF No. 6.......................................................... 11, 13

22

**STATUTES**

23

28 U.S.C. 1404 .......................................................................................... 14

24

35 U.S.C. § 101 ................................................................................... 10, 11, 12

25

35 U.S.C. § 102 ................................................................................... 10, 11, 12

26

35 U.S.C. § 103 ................................................................................... 10, 11, 12

27

35 U.S.C. § 112 ................................................................................... 10, 11, 12

28

# TABLE OF AUTHORITIES
**(continued)**

Page

35 U.S.C. § 261 ............................................................................................................ 6

**OTHER AUTHORITIES**

37 C.F.R § 3.11 ............................................................................................................ 6

37 C.F.R. § 3.54 ........................................................................................................... 6

Fed. R. Civ. P. 7.1 ....................................................................................................... 5

Fed. R. Civ. P. 8 ......................................................................................... 2, 10, 11, 13

Fed. R. Civ. P. 12 ................................................................................................ 1, 7, 10

Fed. R. Civ. P. 15 ...................................................................................................... 15

MPEP § 301 ................................................................................................................. 6

Cal. Civil Local Rule 3-16 .......................................................................................... 5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On February 14, 2011,  Plaintiff Xilinx, Inc. filed this action for declaratory judgment of non-infringement and invalidity of sixteen patents asserted against Xilinx by Defendants. On the very next day, in a bid to avoid the jurisdiction of this Court,  two of the Defendants in this action sued Xilinx in the District of Delaware for infringing four of the patents at issue in this case.  As part of their campaign to escape this Court's reach, Defendants have moved to dismiss Xilinx's Complaint on several grounds.  *First*, relying on a printout from the United States Patent Trademark Office (USPTO), Defendants claim that that Xilinx failed to sue non-parties who were the last registered owners of seven of the patents-in-suit.  However, IV has not even affirmatively plead, let alone proven that it does ***not*** own all substantial rights in the patents-in-suit. In fact, for months before this suit was filed, Defendants took the exact opposite posture by pressuring Xilinx into entering into a license agreement for the very same patents that they now appear to claim they never owned.  During the months of negotiations, Defendants' never represented that anyone else owned the patents-in-suit or that they lacked full authority to sue for infringement of the patents.  It is only now, in order to escape this Court's jurisdiction, that Defendants claim they do not now and never did own any rights to the patents they asserted against Xilinx.

*Second*, Defendants attempt to hide behind the labyrinth of holding companies created by the various IV companies to prevent this Court from exercising personal jurisdiction over them. Defendants argue this Court does not have jurisdiction over Defendants Intellectual Ventures I LLC ("IV-I") and Intellectual Ventures II LLC ("IV-II") because IV-I and IV-II are newly formed companies that have conducted no business in California and therefore are not subject to personal jurisdiction by this Court.  This argument is nothing but a shell game.  Despite the murky and complex structure of the IV enterprise, real power and authority are vested in two corporate entities having significant contacts with California, and in a handful of individuals who regularly do business or reside in California.

*Third*, Defendants assert Xilinx's claims for patent non-infringement and invalidity should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim because Xilinx failed to allege sufficient facts in its Complaint.  According to Defendants, they lack sufficient notice to

1   determine the bases of Xilinx's claims, even though the Defendants provided Xilinx with claim

2   charts during the negotiations purporting to map claim terms of the asserted patents on Xilinx's

3   accused products.  Despite Defendants' protestations, all that is required at this stage is a "short

4   and plain statement" showing that Xilinx is entitled to relief.  Fed. R. Civ. P. 8(a).  Xilinx

5   satisfied this standard.

6          ***Fourth***, once again, hiding behind Defendants' opaque corporate structure, Defendants

7   claim that there is no genuine dispute over ownership or standing of Invention Investment Fund I

8   LP, Invention Investment Fund II LLC, Intellectual Ventures LLC and Intellectual Ventures

9   Management LLC and they should be dismissed as parties.  This is another attempt by IV at

10  playing a corporate shell game that contradicts other statements and evidence in the case and

11  should be rejected.

12         ***Lastly***, Defendants contend that even if their other arguments fail, the Court should sever

13  the claims relating to the patents-at-issue in the later-filed claims it brought against Xilinx in the

14  District of Delaware.  Rather than repeat the arguments here, Xilinx incorporates the reasons set

15  forth in Xilinx's Motion to Enjoin Defendants From Prosecuting a Duplicative Action in the

16  District of Delaware, filed by Xilinx in this action on May 13, 2011, and asks that the Court to

17  deny Defendants' request to sever and transfer the claims to the pending action in Delaware.

18         Accordingly, Defendants' Motion to Dismiss should be denied.

19  **II.    RELEVANT FACTS**

20         **A.    The Defendants**

21         Defendants Intellectual Ventures LLC ("Intellectual Ventures"), Intellectual Ventures

22  Management LLC ("Intellectual Ventures Management"), Intellectual Ventures I LLC ("IV-I"),

23  Intellectual Ventures II LLC ("IV-II"), Invention Investment Fund I LP ("Fund I"), and

24  Investment Fund II LLC ("Fund II") (collectively the "IV companies or entities") are interrelated

25  entities engaged in the acquisition, management, and/or enforcement of patents. The precise

26  details of the relationships among the myriad IV companies is treated by Defendants as a closely

27  guarded secret.[1]  The following is based on  the review of public documents and statements made

28
_____
[1] *See* ECF No. 45-1, ¶ 5 (filed under seal).

XILINX'S OPP'N TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:11-CV-00671 SI

by the Defendants.

Defendants Intellectual Ventures and Intellectual Ventures Management were founded in 1999 and 2000, respectively, by Nathan Myhrvold, Edward Jung, Peter Detkin and Greg Gorder. Behrooz Shariati Declaration ("Shariati Decl.") Exs. 1 & 2 (publically available corporate formation documents). Defendants Intellectual Ventures and Intellectual Ventures Management have the same directors and management and otherwise appear to operate as a single entity. Shariati Decl., Ex. 3 (Chart of IV Entities and Representatives). Intellectual Ventures and/or Intellectual Ventures Management maintain offices within this District. *See* Shariati Decl., Ex. 4, Intellectual Ventures May 26, 2009 Press Release, *available at* http://www.intellectualventures.com/newsroom/pressreleases/archive/09-05-26/Intellectual_Ventures_Opens_Bellevue_Laboratory.aspx ("Intellectual Ventures has offices worldwide, including in Silicon Valley . . . ."); Justin Liu Declaration ("Liu Decl."), Ex. 13 (Business Cards of California-based representatives from the IV entities).

Intellectual Ventures and Intellectual Ventures Management appear to operate together to make up what has been called one of the world's largest patent holding companies. They claim to own rights to more than 30,000 patents and patent applications in their portfolio, which they market to investors through their private IP funds. Shariati Decl., Ex. 5, (IV Corp. Fact Sheet) Defendants Fund I and Fund II (collectively referred to as the "IP Funds") are two such funds. Intellectual Ventures Management is the fund manager for both IP Funds. Following extensive negotiations between the parties, which included multiple presentations delivered by IV to Xilinx in California, Xilinx became a limited partner in both IP Funds. Liu Decl. Exs. 1 & 6.

Defendants IV- I and IV-II were formed in 2010 and appear to be shell companies created for the sole purpose of enforcing through litigation the patents acquired by Intellectual Ventures and Intellectual Ventures Management as part of their IP Funds. Gorder appears to be a managing director of at least Intellectual Ventures, Intellectual Ventures Management, Fund I, and IV-I and IV-II; and Myhrvold, Jung, and Detkin all have some financial or other interest in all the Defendant companies. Shariati Decl., Exs. 1, 2, 6-8 (Corp. formation documents signed by Gorder); Ex. 9 (Defendants' Certificate of Interested Entities, ECF No. 60). IV-I and IV-II are

XILINX' S OPP'N TO DEFENDANTS'
MOTION TO DISMISS
CASE NO. 3:11-CV-00671 SI

the sole plaintiffs in the action brought in the District of Delaware against three of Xilinx's competitors, and later (after the instant action was filed) against Xilinx (the "Delaware Action").

The various individual corporate Defendants are closely related and even appear to be interchangeable. (*See* Shariati Decl., Ex. 3 (Jones Day-prepared chart of IV entities and representatives).  There is significant overlap among the principals and employees of the various companies.  *Id.*  Moreover, the individual Defendant companies conduct themselves as if they are a single entity called "Intellectual Ventures."  For example,  the Intellectual Ventures website claims the copyright as belonging to Intellectual Ventures Management, http://www.intellectualventures.com/Home.aspx. On the same website,  a corporate blog titled "IV Insights Blog" is maintained and regularly updated (*see,* http://www.intellectualventures.com/NewsRoom/Insights.aspx).  A February 16, 2011 blog posting refers to the Delaware Action without making any distinction between Intellectual Ventures Management and Intellectual Ventures.  *Available at* http://www.intellectualventures.com/NewsRoom/Insights/11-02-16/IV_Amends_December_8_2010_Complaint.aspx  ("After receiving notice that Xilinx (a semiconductor company based in California) filed a declaratory judgment against Intellectual Ventures in the Northern District of California, *IV* amended *its* December 8, 2010 complaint to add Xilinx to the list of FPGA . . . defendants.") (emphasis added).  A link to the amended complaint filed by IV-I is provided on the webpage.  Moreover,  recently, counsel for IV-I, plaintiffs in the *Intellectual Ventures I v. Check Point Software Techs.* matter, acknowledged on the record that defendant IV-I "was incorporated [in November of 2010] in order to then merge into it four other entities that were Intellectual Ventures entities that owned the patents . . . .  So at least on our side, [IV-I's] connections to the corporate law of this state are longstanding."  Shariati Decl., Ex. 10, *Intellectual Ventures I LLC v. Check Point Software Techs. Ltd., et al.*, N.D. Del. Case No. 1:10-cv-01067-LPS, Hearing Transcript at 23:3-12.

**B.     The Defendants' Activities in California**

████████████████████████████████████████████████



4 According to Defendants' recent Civil Local Rule 3-16 and Rule 7.1 of the Federal Rules of Civil Procedure filing, it appears that Defendants have negotiated similar investments by other California-based companies. *See* Shariati Decl., Ex. 9, ECF No. 60 (identifying Adobe Systems, Apple, Cisco, eBay, Google, University of Southern California as having a financial interest in one or more of the IP Funds or an IV company).

III.   **ARGUMENT**

> A.   **Defendants' Motion to Dismiss for Lack of Standing and Failure To Join a Necessary Party Should Be Denied Because Defendants Represented to Xilinx That They Own the Patents-in-Suit and They Offer No Proof to the Contrary**

For months, Defendants accused Xilinx of infringing patents and pressured Xilinx to take a license to the patents-in-suit.  Now, Defendants seek to avoid this litigation by claiming that it does not (and apparently never did) own any rights to seven of the 16 patents they had  asserted during the negotiations.  Motion at 5-7, ECF No. 39.  In support, Defendants rely on printouts from the PTO website, which they assert establishes that seven of the patents in suit are not owned by any of the Defendants.  Modi Declaration, Exs. F-L, ECF No. 40.

The main flaw in Defendants' arguments is that the US PTO records of assignment are not conclusive proof of patent ownership.  Indeed, neither the Patent Act, nor the Manual for Patent Examining Procedure require a patent owner to record an assignment or license.  *See* 35 U.S.C. § 261; 37 C.F.R § 3.11(a); 37 C.F.R. §  3.54; and MPEP § 301.  Indeed, IV seldom registers its interest in any patents it acquires in its own name, unless it is absolutely necessary.  A very relevant example is that the patents asserted in the three lawsuits filed on December 8th in Delaware were only registered as being assigned to IV entities immediately before the suit was filed.  Shariati Decl. Ex.. 7, 8 (corporate formation documents for IV-I and IV-II).  Moreover, a

close reading of the Defendants' motion reveals that the Defendants never affirmatively state that they ***do not*** hold a legal right in the seven patents that would entitle them to sue for patent infringement, or explain why they apparently attempted to defraud Xilinx by demanding royalties for patents they did not even own.

      **B.**    **Defendants' Motion to Dismiss Under 12(b)(1) and 12(b)(2) Should be Denied Because this Court has Personal Jurisdiction over IV- I and IV-II Arising out of Their Licensing and Enforcement of the Patents-in-Suit and Their Relationship to Intellectual Ventures and Intellectual Ventures Management Which Have Substantial Contacts With the State**

Defendants move to dismiss Xilinx's Complaint under Federal Rules of Civil Procedure Rule 12(b)(1) based on Xilinx's purported failure to make a *prima facie* showing of personal jurisdiction over Defendants.  Defendants assert that the PTO assignment database proves Defendants IV-I and IV-II own nine of the patents in suit, and that those companies having been formed recently have conducted no business in California.  This is simply a corporate shell game. Defendants IV-I and IV-II are companies that were formed recently to hold the patents being asserted in Delaware. However, representatives of IV-I and IV-II were involved in the negotiations with Xilinx that took place in California.  Moreover, the real entities behind the curtain are defendants Intellectual Ventures and Intellectual Ventures Management that were also involved in negotiations and  appear to control the lawsuit brought in the name of IV-I and IV-II. Shariati Decl. Exs. 11 and 13 (reflecting that Intellectual Ventures and Intellectual Ventures Management are taking credit for and controlling the Delaware litigations).  IV-I and IV-II's own activities, as well as the substantial enforcement and licensing activities conducted by various IV entities and directed towards Xilinx are sufficient contacts on which to base personal jurisdiction for all the interrelated entities, including IV-I and IV-II.

      **1.**    **Legal Standard**

Federal Circuit law governs the issue of personal jurisdiction in patent infringement cases involving out-of-state corporations. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994).  Where, as here, the plaintiff does not have the benefit of discovery, she need only make a prima facie showing of personal jurisdiction over the defendant to survive a

1   motion to dismiss.  *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328-29 (Fed.

2   Cir. 2008).  In ruling on a motion to dismiss for lack of personal jurisdiction, the court may

3   consider pleadings, affidavits and other written materials submitted by the parties, which must be

4   construed in the light most favorable to the plaintiff.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326

5   F.3d 1194, 1201 (Fed. Cir. 2003); *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed.

6   Cir. 2003).

7       A three-part test is used to determine whether the exercise of personal jurisdiction over a

8   nonresident comports with due process, whether: (1) the defendant purposefully directed its

9   activities at residents of the forum; (2) the claim arises out of or relates to those activities; and

10  (3) assertion of personal jurisdiction must comport with fair play and substantial justice.

11  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *Avocent*, 552 F.3d

12  at 1332.  Where a defendant disputes the exercise of personal jurisdiction is fair, the burden of

13  proof is on the defendant, who must "present a compelling case" that the exercise of jurisdiction

14  would not be reasonable. *Id.*

15              **2.    IV-I and IV-II Purposefully Directed Their Activities at Xilinx**

16      Defendants argue that IV-I and IV-II are newly incorporated foreign corporations and

17  have not conducted any business in California, and therefore have not purposefully directed its

18  activities at residents in the forum.  Defendants' argument  fails for several reasons.  First,

19  Defendants argument is simply not true.  According to Defendants, IV- I and IV-II were formed

20  in December 2010.  Motion at 9-10, ECF No. 39.  Between December 2010 and February 2011,

21  Joe Chernesky and Mark Wilson, representing IV-I and IV-II, and corresponded with Xilinx via

22  email and met with Xilinx at its headquarters in San Jose and at other locations within this

23  District to pressure Xilinx to take a license to the patents-in-suit.[5]  Liu Decl. ¶¶ 8-10.  Such

24  enforcement-related activity  is sufficient to establish specific jurisdiction over IV- I and IV-II.

25  _____

26      [5] There can be no doubt that Mr. Chernesky represented IV-I and II.  In a December 8,
    2010 email to Xilinx, Mr. Chernesky reported that "[*w*]*e* have filed complaints against nine
    companies for violating our parents, including three companies operating in the FPGA/PLD

27  marketplace.  *We* took this action only after *our* efforts to engage these companies in business
    discussions broke down . . . ."  Shariati Decl., Ex. 11 (emphasis added).  The Complaints in the

28  Delaware Actions were filed by IV-I and IV-II.

1   *Juniper Networks, Inc. v. Altitude Capital Partners, L.P.*, No. C 09-03449 JSW, 2010 WL

2   5141839, at *6 (N.D. Cal. Dec. 13, 2010). *See also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,

3   557 F.2d 1280, 1287 (9th Cir. 1977).

4       Second, to the extent that IV- I and IV-II are merely an extension of Intellectual Ventures

5   and  Intellectual Ventures Management, their activities and contacts with California are sufficient

6   to warrant the exercise of personal jurisdiction.[6]

7           **3.    Xilinx's Claims Arise Out of Defendants' Enforcement and Licensing**
            **Activities in California**

8

9       Xilinx's claims for invalidity and non-infringement arise out of and relate to Defendants'

10  ongoing enforcement and licensing of the patents-in-suit.  As discussed above, Defendants

    engaged in a campaign to enforce and license the patents in suit.  As part of that campaign,
11
    representatives from Intellectual Ventures, Intellectual Ventures Management, IV-I and IV-II
12
    have communicated and met with Xilinx within the District and accused Xilinx of infringing the
13
    patents-in-suit. Liu Decl. ¶ 4-11.  Xilinx's claims against Defendants arise out of these
14
    allegations.
15
            **4.    Defendants Have Had Sufficient Contacts With California For This**
16          **court to Fairly and Reasonably Exercise Jurisdiction Over Them**

17      Defendants' numerous purposeful contacts with California make it fair and reasonable for

18  this court to exercise personal jurisdiction over them.

19      Indeed, Intellectual Ventures and/or Intellectual Ventures Management's contacts here are

20  sufficiently "continuous and systematic" to establish general jurisdiction. *Schwarzenegger v.*

21  *Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).   According to its website, Intellectual

22  Ventures maintains a "global office" in Silicon Valley, California.  Shariati Decl., Ex. 5.  One of

23  Intellectual Ventures' Managing Directors, Peter Detkin, lives in Los Altos, California.  Shariati

24  Decl., Ex. 11 (Detkin California State Bar profile).  Detkin actively participated in the ongoing

25  license negotiations with Xilinx, which resulted in the execution of a patent license Agreement

26  with Xilinx.  Moreover, while the precise details of the negotiations are unknown to Xilinx, it is

27  likely that IV conducted similar complex negotiations with other California-based companies, as

28       [6] *See* Section III.B.4., below.

IV certainly licenses its patents to several California-based companies.  *See* Shariati Decl. Ex. 9 (Defendants' Certificate of Interested Entities, ECF No. 60).  The Court's exercise of personal jurisdiction is appropriate under such circumstances.  *See United States v. Cathcart*, 2010 WL 1048829, at *3 (N.D. Cal. Feb. 12, 2010) (finding personal jurisdiction where defendant maintained an office within the state); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (finding it reasonable to exercise personal jurisdiction where the defendant entered into contract with plaintiff that would create continuing obligations between defendant and residents of the forum).

Defendants should not be allowed to defeat personal jurisdiction by engaging in a shell game with holding companies to carry out their enforcement strategy.  IV-I and IV-II should remain a party to this lawsuit so that the declaratory judgment to which Xilinx seeks and is entitled is fully binding on all Defendants.

**C.    Xilinx's DJ claims Are Sufficiently Pled to Survive Defendants' Motion to Dismiss**

Even though IV representatives were the ones that provided Xilinx with claim charts during negotiations accusing Xilinx products of infringing specific IV patent claims, IV now contends Xilinx's Complaint for Declaratory Judgment are insufficient pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) because Xilinx's complaint merely cites to the sections of the Patent Act and fails to "specify any particular products, conduct, or patent claims."  Motion at 10, ECF No. 39.  However, Federal Rules of Civil Procedure Rule 8 requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Xilinx's Complaint alleges that each of the patents-in-suit is not infringed and that it is invalid because it "fail[s] to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112."  ECF No. 1, ¶¶ 34, 50, 66, 82, 98, 114, 130, 146, 162, 178, 189, 205, 221, 237, 253, 264.  Invalidity allegations such as these that identify the statutory basis for a plaintiffs' claim for invalidity provide sufficient notice to defendants as to what they must

1   defend, and are therefore sufficient under Rule 8.  ECF. No. 39 at 12; *Wistron Corp. v. Phillip M.*

2   *Adams & Assocs. LLC*, No. C-10-4458 EMC, 2011 U.S. Dist. LEXIS 46079, at * 36-37 (N.D.

3   Cal. Apr. 28, 2011) (recognizing that other courts have upheld similar pleadings as sufficient and

4   noting agreement with those decisions).  *See also Vistan Corp. v. Fadei USA, Inc.*, No. C-10-4862

5   JCS,  2011 U.S. Dist. LEXIS 47099, at *21-22 (N.D. Cal. Apr. 25, 2011) (holding that

6   Defendants' counterclaims, which allege "that the claims of the [patents-in-suit] are

7   unenforceable for failure to meet the requirements of the United States patent laws" (*Vistan*, N.D.

8   Cal. Case No. C-10-4862  JCS,  Answer To Complaint and Counterclaims For Damages and

9   Declaratory Judgment, ECF No. 11)  are "sufficient to satisfy the pleading requirements of Rule

10   8.").

11        In *Wistron*, which was decided earlier this year, the plaintiffs alleged that each patent-in-

12   suit "fails to satisfy the conditions and requirements for patentability as set forth, *inter alia*, in

13   Sections 101, 102, 103, and/or 112 of Title 35 of the United States Code."  *Wistron*, N.D. Cal.

14   Case No. C-10-4458 EMC, First Amended Complaint for Declaratory Judgment of Non-

15   Infringement and Invalidity, ECF No. 6, ¶¶ 34, 38, 42, 46, 50, 54, 58, 62, 66, 70, 74, 78, 82, 86.

16   The Court found the claims to be sufficient under Rule 8 and denied the Defendants' motion to

17   dismiss the claims.  *Wistron,* 2011 U.S. Dist. LEXIS 46079, at *38-41.   In upholding the

18   plaintiffs' claims for invalidity, the Court reasoned that to require plaintiffs to provide more detail

19   about its invalidity claims during the pleading stage would "circumvent this Court's Patent Local

20   Rules which require detailed disclosures as to invalidity contentions soon after the suit is filed."

21   *Id.* at *37.  "By requiring the party claiming invalidity to flesh out and support its invalidity

22   contentions early on, the Patent Local Rules fulfill the function of *Twombly* and *Iqbal*."  *Id.* at

23   *37-38.

24        Other courts have similarly upheld allegations of invalidity where the pleader merely cited

25   to specific provisions of the patent laws.  *See Microsoft Corp. v. Phoenix Solutions, Inc.*, 741 F.

26   Supp. 2d 1156 (C.D. Cal. 2010) (finding allegation that "one or more claims of the [patent-in-

27   suit] are invalid for failure to meet one or more of the requirements of Title 35 of the United

28   States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112"; *Microsoft Corp.*

*v. Phoenix Solutions*, C.D. Cal. Case No. CV 10-3846 MRP, Complaint for Declaratory Relief, ECF No. 1; *Elan Pharma Int'l Ltd. v. Lupin Ltd.*, Civil Action No. 09-1008 (JAG), 2010 U.S. Dist. LEXIS 32306, at *12-13 (D.N.J. Mar. 31, 2010), (unpublished opinion) (denying motion to dismiss invalidity counterclaim alleging "[t]he claims of the [patent in suit] are invalid under one or more provisions of 35 U.S.C. § 101 et seq."  (*Elan Pharma*, D.N.J. Case No. 09-cv-01008-JAG-MCA, Lupin Ltd. and Lupin Pharmaceuticals Answer, Defenses and Counterclaims, ECF No. 12, ¶¶ 21, 29, 37)).  *Teirstein v. AGA Med. Corp.*, Civil Action No. 6:08cv14, 2009 U.S. Dist. LEXIS 125002, at *11-17 (E.D. Tex. Feb. 13, 2009) (upholding as sufficient Defendants allegations that "the claims of the '*995 patent* are invalid for failing to satisfy one [or] more of the statutory requirements for patentability set forth in *35 U.S.C. §§ 101, 102, 103*, and/or *112*").  *Pfizer Inc.  v. Apotex Inc.*, 726 F. Supp. 2d 921, 937-38 (N.D. Ill. 2010) (upholding allegations "that the [patents in suit] are 'invalid for failure to comply with one or more of the conditions of patentability set forth in Title 35 of the United States Code'" and finding that "[w]hile brief, those allegations are sufficient to put Pfizer on notice of what Apotex is claiming -- invalidity of the Unasserted Patents -- and the grounds upon which this claim rests -- failure to satisfy one or more of the conditions of patentability").

Xilinx's non-infringement claims are also sufficiently pled and provide adequate notice to IV as Xilinx's non-infringement claims.  Xilinx's Complaint alleges "IV has accused Plaintiff of infringing the [patents-in-suit] through its manufacture, sale, use, and/or importation of certain [products], and has asserted that Plaintiff must take a license to the [patents-in-suit] to lawfully continue the manufacture, sale, use, and/or importation of these [products]."  Complaint, ECF No. 1, ¶¶ 27, 43, 59, 75, 91, 107, 123, 139, 155, 171, 182, 198, 214, 230, 246, 257.  This Court recently denied a motion to dismiss similar allegations in *Vistan*.  *Vistan Corp.*,  2011 U.S. Dist. LEXIS 47099, at *21-22 (holding that Defendants' counterclaim for non-infringement, which merely states that "[Defendant] has not infringed any valid and enforceable claim of the [patent-in-suit]," was sufficient to place Plaintiff on notice of the claims.  (*Vistan*, N.D. Cal. Case No. C 10-4862  JCS,  Answer To Complaint and Counterclaims For Damages and Declaratory Judgment, ECF No. 11, ¶ 94.)  *Cf. Wistron*, 2011 U.S. Dist. LEXIS 46079, at *38-41 (dismissing

1    Defendants non-infringement counterclaim which alleged "[Defendants] seek a judicial

2    determination and declaration that no valid and enforceable claim of the [patents-in-suit] is

3    infringed by [Defendants]" (*Wistron*, N.D. Cal. Case. No. 3:10-cv-04458 EMC, First Amended

4    Complaint, ECF No. 6, ¶¶ 33, 37, 41, 45, 49, 53, 57, 61, 65, 69, 77, 81, 85),  and directing

5    Defendants to, if they choose to amend, identify the products accused of infringement to satisfy

6    *Twombly* and *Iqbal*).  Here, Xilinx has alleged the accused products (certain integrated circuits

7    previously accused by IV) and the accused conduct (manufacturing, sale, use, and/or

8    importation).  These allegations are sufficient to put IV on notice of its claims.  Despite

9    Defendants' assertion to the contrary, there simply is no requirement that Xilinx allege the

10   asserted claims.  *See Teirstein*, 2009 U.S. Dist. LEXIS 125002, *14 ("The Federal Rules do not

11   require Plaintiff to assert facts as to why the accused products allegedly infringe, nor to

12   specifically list the accused products."); *Microsoft*, 741 F. Supp. 2d at 1159-1160 (dismissing

13   motion to dismiss counterclaim for non-infringement and reasoning "that minimal pleading of

14   direct infringement is sufficient because this Court requires the prompt filing of infringement

15   contentions, which put the party accused of infringement on detailed notice of the basis for the

16   allegations against it").

17           Finally, denying Defendants' Motion to Dismiss Xilinx's declaratory judgment claims for

18   invalidity and non-infringement is consistent with the policy behind Rule 8, which is to ensure a

19   defendant has fair notice of the claims asserted against her.  Defendants' assertion that Xilinx's

20   Complaint fails to give IV fair notice of Xilinx's claims is untenable and flies in the face of this

21   public policy.  Xilinx brought this declaratory judgment action because IV has accused Xilinx's

22   integrated circuits of infringing its patents.  Liu Decl. ¶¶ 8-11.  Defendants' representatives have

23   engaged in a campaign to extract from Xilinx a license to the patents in suit.  At meetings held at

24   various locations in California and in correspondence, representatives of IV have stated that it has

25   studied Xilinx's integrated circuits and that it believes Xilinx's ICs infringe the patents-in-suit.

26   IV provided Xilinx with claim charts outlining its contentions regarding Xilinx's alleged

27   infringement.  Liu Decl. ¶ 10.  IV should not now be permitted to claim that it has no notice of the

28   patent claims at issue, or the specific Xilinx products alleged to be infringing.

**D.      Judicial Economy Would Not Be Served By Severing Certain of the Claims and Transferring Them To Delaware**

Defendants alternatively request that the Court transfer this action to the District of Delaware.  Motion at 16-21, ECF No. 39.  As the moving parties, "[IV] must make a strong showing of inconvenience to warrant upsetting [Xilinx's] choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843 (9th Cir. 1986).

Defendants proceed to argue for four and a half pages why this Court should sever twelve of the claims in Xilinx's Complaint and transfer them to the later-filed claims now pending in the District of Delaware.  However, Defendants wholly failed to even mention, let alone address, two highly relevant issues.

First, Defendants completely ignore the fact that Xilinx's Complaint in this case was filed before IV- I and IV-II filed its claims against Xilinx in the Delaware Action.  As more fully briefed in Xilinx's Motion to Enjoin previously filed in this case, the first to file rule applies to this action and, as there is no valid exception to the first to file rule, Defendants should be enjoined from pursuing their claims against Xilinx in Delaware.  *See* Xilinx Motion to Enjoin, ECF No. 56.  Therefore, Defendants' motion for severance and transfer should be denied.

Second, Defendants base their argument almost entirely on the great burden that would be placed on the parties, the courts, and the non-party witnesses if the claims are not severed and both this action and the Delaware Action proceeded separately.  Motion at 16-20, ECF No. 39.  The Defendants failed to mention that Xilinx has moved to dismiss or transfer the claims in the Delaware Action pursuant to the first-filed rule, and Xilinx's co-defendants in that case have moved to transfer under 28 U.S.C. 1404.  As the first-filed case between Xilinx and Defendants, this Court should determine whether Defendants may proceed with their claims against Xilinx in Delaware, or whether they should be enjoined from doing so pursuant to the first-to-file rule. *See Genentech, Inc. v. GlaxoSmithKline*, LLC, Case No. 5:10-cv-04255-JF /PVT, 2010 U.S. Dist. LEXIS 126773, at *12 (N.D. Cal. Nov. 30, 2010) (holding that on a motion to transfer, the court with jurisdiction over the first-filed action should weigh the convenience factors and conduct the jurisdictional analysis whether in the first instance).

1    Defendants' sole remaining argument is that the convenience of non-party witnesses

2    strongly favors severance and transfer of the overlapping claims to Delaware.  Not only has IV

3    not made a "strong showing" of inconvenience if the claims were not severed, but, as Xilinx

4    made clear in its Motion to Enjoin,  the opposite is true—California is the more convenient factor

5    for both parties, as well as for non-parties witnesses.  *See* Xilinx Motion to Enjoin at 8-10, ECF

6    No. 56.

7         **E.    In the Alternative, to the Extent the Court Grants Defendants' Motion, Xilinx Requests Leave to Amend the Complaint**

8

9    In the event the Court is inclined to grant Defendants Motion to Dismiss, Xilinx

10   respectfully requests leave to amend its Complaint to cure any deficiency perceived by the Court.

11   Under the Federal Rules, such leave should be granted "freely."  Fed. R. Civ. P. 15(a)(2).

12   Moreover, if the Court finds that personal jurisdiction over Defendants is not supported by the

13   record, Xilinx respectfully requests leave of the Court to take focused discovery from Defendants

14   to determine the nature and extent of the relationships among and between them, and the nature

15   and extent of Defendants' contacts with the state.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &*

16   *Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (holding jurisdictional discovery should be

17   permitted if it might well demonstrate facts sufficient to constitute a basis for jurisdiction).

18   **IV.   CONCLUSION**

19   For the reasons stated above, the Court should deny Defendants' Motion to Dismiss

20   Xilinx's Complaint for Declaratory Judgment.  In the alternative, if the Court grants Defendants'

21   Motion to Dismiss, it should also grant Xilinx leave to amend its Complaint and/or grant Xilinx

22   leave to take jurisdictional discovery.

23

24

25

26

27

28

1    Dated:  July 8, 2011                        JONES DAY

2

3                                               By:   /s/ Behrooz Shariati

4                                                  Behrooz Shariati
                                                   State Bar No. 174436
5                                                  JONES DAY
                                                   1755 Embarcadero Road
6                                                  Palo Alto, CA  94303
                                                   Telephone:       650-739-3939
7                                                  Facsimile:       650-739-3900

8                                               Attorneys for Plaintiff
                                                XILINX, INC.
9

10

11

12

13

14
     SVI-94176v7
15

16

17

18

19

20

21

22

23

24

25

26

27

28